**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN HILL and MELISSA HILL, | ) | |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| WELLS FARGO BANK, N.A., d/b/a | ) | |
| WELLS FARGO HOME MORTGAGE, | ) | |
| LPS FIELD SERVICES, INC., and | ) | |
| CHICAGO REALTY PARTNERS, LTD. | ) | |
| d/b/a REO ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

## CLASS ACTION COMPLAINT

1.      Plaintiffs Brian and Melissa Hill, on behalf of themselves and all similarly-situated individuals, seek relief against Defendants Wells Fargo Bank, N,A, d/b/a Wells Fargo Home Mortgage ("Wells Fargo"), LPS Field Services, Inc. ("LPS"), and Chicago Realty Partners, Ltd., d/b/a REO Illinois ("REO").

2.      Defendants committed unfair and deceptive business practices, which violate the express public policy of the State of Illinois as embodied in the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.*), unlawfully trespassed, and wrongfully deprived Plaintiffs and other Illinois homeowners of the exclusive possession and quiet enjoyment of their homes.

3.      Defendants harassed Plaintiffs with repeated entries into their home and onto their property without any finding of abandonment or other order granting Defendants such rights.

## PARTIES

4.      Plaintiffs Brian Hill and Melissa Hill are a married couple who own the property

located at 1019 Barberry Lane, Round Lake Beach, Illinois 60073.

5.     Defendant Wells Fargo Bank, N.A. avers that it is the mortgagee and servicer of the Hills' property located at 1019 Barberry Lane, Round Lake Beach, Illinois 60073.  *See* Exhibit A.

6.     On information and belief, Wells Fargo is a citizen of South Dakota and engages in banking and mortgage lending services throughout this district and has subjected itself to the laws of the State of Illinois.

7.     Wells Fargo retained Defendant LPS Field Services, Inc. as its agent to effectuate the entries into Plaintiffs' home, board up the Plaintiffs' home, enter onto Plaintiffs' property, and repeatedly post harassing bulletins on the Plaintiffs' property.  LPS describes itself as a "national leader" in field services and offers "comprehensive preservation services" such as lock changes and board-ups through its "national network" of "field service professionals."

8.     LPS is a Delaware corporation, headquartered in Florida, with a registered agent located in this district.  LPS has subjected itself to the laws of the State of Illinois.

9.     On information and belief, LPS in turn retained REO Illinois as its agent to perform the activities described in paragraph 7 above.

10.     REO Illinois is the assumed business name of Defendant Chicago Realty Partners, Ltd., an Illinois corporation.

11.     REO Illinois maintains a website which describes its foreclosure services and its "four step protocol":



## JURISDICTION AND VENUE

12.     Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiffs'

and the class members' claims arise under the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq*.  Supplemental jurisdiction over the state law claims exists under 28 U.S.C. §

1367(a).

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and

transactions that give rise to this action occurred, in substantial part, in this district.  Venue is also

proper in this district since Defendants can be found, have agents, and transact business in this

district.

## FACTS SPECIFIC TO PLAINTIFFS

14.     On September 24, 2001, Plaintiffs executed a mortgage and note with Washington

Mutual Bank, FA for the property located at 1019 Barberry Lane, Round Lake Beach, Illinois 60073,

for the principal sum of $76,599.00.

15.     Plaintiffs lived at the property with their young daughter and made their mortgage

payments for several years.

16.     During the fall of 2008, Brian Hill lost his job as a union carpenter.  To try and make

ends meet, Melissa Hill (formerly a stay-at-home mother) found work, but it paid less than her

husband's former job.  When the Hills' savings and carpenters' annuity ran out, even with Melissa's

salary, the Plaintiffs struggled with putting food on their table and making their monthly mortgage payments.

17.     As a result of their hardship, the Plaintiffs contacted their mortgage servicer, Wells Fargo, about different workout options.  Wells Fargo represented to Plaintiffs that they were eligible for a "6 month moratorium" or words to that effect, explaining that the 6 months of deferred payments would be added on to the end of their loan term.

18.     In April of 2010, prior to the termination of the 6 month deferral period, Brian Hill spoke with Wells Fargo and asked to be considered for a loan modification.  Wells Fargo represented to Mr. Hill that the Plaintiffs' monthly income was not high enough to qualify for a modification.  Instead of helping, Wells Fargo reneged on its deferment representations and sent a letter demanding payment in full of the prior 6 months of deferred mortgage payments.

19.     Next, on June 7, 2010, Wells Fargo filed a complaint to foreclose against the Hills in the Circuit Court of Lake County, Case No. 10 CH 3212.  *See* Exhibit A.  The complaint stated, "Plaintiff seeks to terminate the right to possess the mortgaged real estate after confirmation of a foreclosure sale against all defendants who have the right to possess the property."

20.     Attached to the summons and complaint was Wells Fargo's "IMPORTANT INFORMATION FOR HOMEOWNERS IN FORECLOSURE."  Defendant's notice stated, among other things: "1. POSSESSION: The lawful occupants of a home have the right to live in the home until a judge enters an order for possession.  2. OWNERSHIP: You continued to own your home until the court rules otherwise."

21.     The Hills were served with the complaint and appeared at the first court status hearing on September 17, 2010.  At that time, the Hills informed both the court and Wells Fargo's attorney that they intended to keep their family home and find a way to work the matter out.  Accordingly, on

or about October 10, 2010, the Hills filed a *pro se* appearance and answer, indicating their intent to defend the foreclosure action. The foreclosure case was set for a continued status hearing on December 17, 2010.

22. Despite the Hills appearing in court to defend their rights to their home, on or about November 1, 2010, Brian Hill returned home to find that two men had broken into his home through the side door. The deadbolt and door knob were removed and replaced, the hot water tank was drained (by drilling a hole in the floor and making it unserviceable), faucets were opened to drain the water lines, the main gas valve was shut off, and antifreeze was dumped in the toilet.

23. While in the home, the two men rifled through the Hills' personal effects, and Brian Hill discovered that multiple items of personal property were missing including, most importantly, the very tools that Mr. Hill relied upon for his livelihood as a carpenter.

24. Mr. Hill filed a police report and an insurance claim and worked to secure his and his wife's identities with the bank and other financial institutions holding accounts for them, given that their account numbers may have been compromised during the break-in.

25. At the December 17, 2010 status in the foreclosure action, the Hills advised the court of the break-in and theft. The judge confirmed that no order had been issued and nothing had transpired in the case which would have provided Wells Fargo with any right to enter the Hills' home. The judge asked Wells Fargo's attorney to find out what happened, and continued the case until April of 2011.

26. In the following months, Wells Fargo, by and through its agents, posted numerous notices on the Hills' home. Wells Fargo also filed a motion for summary judgment, asking for the Hills to pay, among other things, costs associated with its agents' break-ins and postings.

5

27.     Hearing on the motion for summary judgment was set for October 18, 2011.  Despite the fact that no order had been entered granting Wells Fargo permission to enter or take possession of the property, on or about September 7, 2011, Wells Fargo ordered another break-in.  Once again, Brian Hill returned home to discover that his locks were changed.  This time, however, the new lock was not properly fitted and the Hills' home was left unsecured.  Therefore, the Hills were forced to hire a locksmith to change the locks again.  For the second time, the Hills' belongings were tampered with and the privacy and security of their personal effects inside the home, including furniture, clothing, and toys, were unfairly violated.

28.     On information and belief, the above actions were taken by Defendants to wrongfully induce the Hills' abandonment of the property.

## CLASS ALLEGATIONS

29.     This complaint is brought on behalf of Plaintiffs and the members of a class.   The class is defined as all persons in the State of Illinois who were dispossessed of their homes prior to the entry of any court order which: (a) determined the property had been abandoned; or (b) ordered possession or a judgment of foreclosure, sale, and confirmation of sale pursuant to 735 ILCS 5/15-1508.

30.     On information and belief, the class is so numerous that joinder of all individual members in one action would be impracticable.

31.     Plaintiffs' claims are typical of the claims of the class members.  All are based upon the same legal theories and arise from the same unlawful conduct.

32.     There are common questions of law and fact affecting members of the class, which common questions predominate over questions that may affect individual members.  These common questions include, but are not limited to:

6

a.     Whether Defendants' practices of boarding up, locking out, changing locks, and entering into homes without notice or hearing or a court order, along with other methods designed to dispossess borrowers from their homes and induce abandonment prior to a judgment of foreclosure or finding by a court of abandonment, violates statutory and common law; and

b.     Whether Defendants' pre-judgment dispossession constitutes unfair and deceptive business practices, or actions intended to induce abandonment, and unlawful trespass.

33.     Plaintiffs will fairly and adequately represent the members of the class. Plaintiffs have no interests that conflict with the interests of the class members. Plaintiffs have retained counsel experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests that might cause them to not pursue this claim vigorously.

34.     This action should be maintained as a class action because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class.

35.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole because:

a.     At all relevant times, Plaintiffs and the class members were never found by any court to have abandoned their homes.

b.     At all relevant times, Plaintiffs and the class members had not been the subject of any court order or proceeding providing pre-judgment access to or a transfer of possession of their property.

c.     Defendants never provided Plaintiff and the class members with notice that they were going to dispossess them from their homes without a court order. To the contrary, Defendants' notices expressly represented that Plaintiffs and the class members would remain in their homes until a court ordered otherwise.

d.     Plaintiff and the class members had an absolute right to their properties as Defendants never obtained any judicial order of possession nor did they have any

finding by a court of abandonment.  In Illinois, the sale of a home can only occur after a judgment of foreclosure has been entered.  Under 735 ILCS 5/15-1508, the homeowner has the right to remain in possession for thirty days after entry of an order of possession, as provided under 5/15-1701(c).

## COUNT I
### *Violations of the Fair Debt Collection Practices Act*
### *Against Defendants LPS Field Services, Inc. and REO Illinois*

36.     Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-35 as if set forth fully herein.

37.     This Count is brought on behalf of Plaintiffs and the class.

38.     Defendants LPS Field Services and REO Illinois are subject to liability under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6).

39.     In the course of seeking to enforce Wells Fargo's security interests in mortgaged homes, Defendants LPS Field Services and REO Illinois employed threats of nonjudicial action, as well as actually taking nonjudicial action, to dispossess Plaintiffs and the class members from their homes.

40.     Defendants LPS Field Services and REO Illinois' conduct occurred prior to any rights to take property were granted.

41.     The foreclosure actions filed against Plaintiffs and the class were filed under authority of the Illinois Mortgage Foreclosure Law.  See 735 ILCS 5/15-110.

42.     As such, the dispossession of the Plaintiffs and the class members' property is governed exclusively by the courts presiding over the foreclosure actions.

43.     Under 735 ILCS 5/15-1104:

Any person who willfully misrepresents to the Court any fact resulting in a finding of abandonment of mortgaged real estate in connection with subsection (b) of Section 15-1603 or subsection (d) of Section 15-1706 of this Article [735 ILCS 5/15-1603 or 735 ILCS 5/15-1706] or who threatens to injure the person or property of occupants of mortgaged real estate, or who knowingly gives such occupants false and misleading information, or who harasses or

8

intimidates such occupants, with the intent of inducing such occupants to abandon the mortgaged premises, in order to obtain a finding of abandonment under subsection (b) of Section 15-1603 or subsection (d) of Section 15-1706 of this Article [735 ILCS 5/15-1603 or 735 ILCS 5/15-1706], shall be guilty of a Class B misdemeanor.

44.     All attempts by Wells Fargo's agents LPS Field Services and REO Illinois to induce abandonment of property constitute illegal activity.

45.     Defendants' tactics include, but are not limited to, breaking into homes, turning off water supplies, changing locks, posting notices on front doors and windows, and boarding up windows.

46.     These tactics, when performed prior to any court finding, are illegal.

47.     Defendants LPS Field Services and REO Illinois therefore violated 15 U.S.C. §1692f(6) since there was no present right to possession when they dispossessed Plaintiffs and the class members from their homes.  In Plaintiffs' case, locks were broken and changed.

48.     Defendants' outrageous conduct gives rise to classwide actual damages (such as out-of-pocket costs to return properties to their pre break-in condition and requests for payment of costs associated with Wells Fargo's agents' break-ins and postings) as well as statutory damages.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and in favor of the proposed class, against Defendants LPS Field Services, Inc. and REO Illinois, and award:

A)      Actual damages in an amount to be proven at trial;

B)      Statutory damages as provided by 15 U.S.C. §1692k;

C)      Reasonable attorneys' fees and costs; and

D)      Such other and further relief as this Court may deem just and proper.

**COUNT II**
*Violations of the Illinois Consumer Fraud Act*
*Against All Defendants*

9

49. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-35 as if set forth fully herein.

50. This Count is brought on behalf of Plaintiffs and the class.

51. 815 ILCS 505/2 of the Illinois Consumer Fraud Act ("ICFA") provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45].

52. Instead of complying with the law and taking the legally required steps to gain possession of mortgaged properties, Defendants unlawfully dispossessed Plaintiffs and the class members from their homes.

53. Wells Fargo was negligent or reckless in the selection, instruction, supervision, and retention of LPS Field Services and REO Illinois and therefore, can be held liable for the unlawful acts of its agents. Likewise, LPS Field Services was negligent or reckless in the selection, instruction, supervision, and retention of REO Illinois and therefore, can be held liable for the unlawful acts of its agents.

54. Defendants' conduct is unfair and prohibited by the ICFA as it violates public policy.

55. The laws and public policy of the State of Illinois are expressed in the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.*) which provides, among other things, that:

a. The wrongful inducement of abandonment of property is prohibited.

      b.      Mortgagors are entitled to possession of real estate until the court rules otherwise.

      c.      Mortgagors have thirty days after judicial confirmation of a sale to remain in their homes.

      d.      Mortgages may only be foreclosed in accordance with the Illinois Mortgage Foreclosure Law.

56.      Moreover, in response to this unprecedented economic and foreclosure crisis, Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008, amending it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (together, the "Act"). 12 U.S.C. § 5201 *et seq.*

57.      The purpose of the Act is to restore liquidity and stability to the financial system; additionally, the legislation requires that the Act be implemented in a manner that "protects home values" and "preserves home ownership." 12 U.S.C. § 5201.

58.      The Act established the Troubled Asset Relief Program ("TARP"), 12 U.S.C. § 5211. To this end, under TARP, the U.S. Government was to purchase assets and equity from financial institutions, including toxic securitized mortgages. Congress allocated up to $700 billion to the United States Department of the Treasury for TARP. 12 U.S.C. § 5225.

59.      Consistent with the TARP mandate, the Treasury Department implemented the Home Affordable Modification Program ("HAMP"), a detailed program designed to avert the foreclosure crisis by providing affordable mortgage loan modifications and other alternatives to distressed borrowers who satisfied certain eligibility requirements.

60.      As a condition of obtaining money from the government under TARP, each and every financial institution/mortgage servicer was required to participate in HAMP, and offer HAMP loan modifications to eligible borrowers.

61.      By accepting TARP funds, Wells Fargo agreed that it would participate in TARP

11

programs authorized by the Secretary of Treasury to minimize foreclosures. Wells Fargo's

agreement to sign a Servicer Participation Agreement ("SPA") also meant that it agreed to

comply with HAMP's requirement to perform loan modifications and other foreclosure

prevention services described in the HAMP guidelines. These HAMP guidelines, which are

issued by the Treasury Department, require the financial institutions to, among other things:

    a.    Collect financial and other personal information from the homeowners to evaluate whether the homeowner is eligible for a loan modification under HAMP;

    b.    Use reasonable efforts to contact borrowers facing foreclosure to determine their eligibility for HAMP, including in-person contacts at the servicer's discretion;

    c.    Provide a modified loan with a reduced payment amount as per a mandated formula, known as the "loss mitigation waterfall," which is effective for a three-month trial period for borrowers that are eligible for modification;

    d.    Provide a permanent loan modification to those homeowners who successfully complete the three-month trial period; and

    e.    Provide written notices to every mortgage borrower that has been evaluated for a HAMP loan modification to inform the borrowers whether they were found eligible. If ineligible, the financial institution is required to inform the borrower of the reasons for his or her ineligibility.

    62.    HAMP and its associated directives also prohibit certain conduct, including

demanding upfront payments in order to be evaluated for a HAMP loan modification, instituting

or continuing foreclosures while a borrower is being evaluated for a loan modification, and

contain restrictions on the way a servicer may report the borrower to a credit reporting agency.

    63.    Thus, instead of acting fairly and evaluating distressed borrowers for HAMP loan

modifications, offering HAMP loans to those that qualified, Wells Fargo chose to foreclose and

then, most egregiously, took nonjudicial action to claim possession.

    64.    As a result of filing foreclosure actions against Plaintiffs and the class members,

Wells Fargo subjected the issues of property vacancy, abandonment, and possession to the state

court.

65.     All Defendants' actions were additionally and independently unfair, unconscionable, and oppressive in that they summarily took possession of Plaintiffs and the class members' properties without a court determination, let alone notice or hearing, especially where the foreclosure complaints advised consumers they were entitled to remain in possession of their property. Wells Fargo submitted the issue of pre-judgment possession to the courts. Under 735 ILCS 5/15-1103, once a foreclosure lawsuit is filed, the jurisdiction of the court "continues during the entire pendency of the foreclosure and until disposition of all matters arising out of the foreclosure." (Emphasis added).

66.     Defendants' actions were additionally and independently unfair, unconscionable, and oppressive in that the form foreclosure complaint notice to homeowners represented that "the lawful occupants of a home have the right to live in the home until a judge enters an order for possession." (Emphasis added). Plaintiff contends that the representations made in the pleadings of the state foreclosure are inconsistent, materially misleading and unfair.

67.     Defendants' actions were additionally and independently unfair, unconscionable, and oppressive in that Defendants summarily took possession of Plaintiffs' property when Defendants knew that Plaintiffs could not have "abandoned" the property. Plaintiffs' home was filled with their personal possessions and Plaintiffs had appeared to defend the state foreclosure action.

68.     Wells Fargo's actions, individually and through their agents, in breaking and entering into and upon Plaintiffs' and the class members' properties were unfair, unconscionable, and oppressive.

69.     Wells Fargo's regular practice is to hire agents such as LPS Field Services and

13

REO Illinois without any pre-judgment court order permitting such action.

70.     Defendants' attempts to take possession of Plaintiffs and the class members' property was unethical, immoral, oppressive, and unscrupulous in that, among other things, it was done without authority to do so and deprived Plaintiffs and the class of their legal rights to remain in their homes.

71.     Defendants' conduct is not just unfair but it is also deceptive because the mortgage foreclosure summons advised homeowners that, "The lawful occupants of a home have the right to live in the home until a judge enters an order for possession." These representations were made with the intent that Plaintiffs and the class members rely on them.

72.     Plaintiffs and the class members were substantially damaged as result of Defendants' conduct in that, among other things, they were dispossessed from their homes and indebted for the services wrongfully performed by Defendants.

73.     Defendants' conduct occurred in the course of trade or commerce of Ilinois.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and in favor of the proposed class, against Defendants Wells Fargo Bank, N.A., LPS Field Services, Inc. and REO Illinois, and award:

A)      Injunctive relief as appropriate;

B)      Actual and punitive damages under the Illinois Consumer Fraud Act, 815 ILCS 505/10;

C)      Reasonable attorneys' fees and costs; and

D)      Such other and further relief as this Court may deem just and proper.

## COUNT III
### *Trespass, Brought By Plaintiffs, Individually, Against all Defendants*

74.     Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-35 as if set forth fully herein.

75.     This Count is brought on behalf of Plaintiffs individually.

76.     Plaintiffs were in exclusive possession of their home and never relinquished their rights to quiet enjoyment of the property.

77.     Plaintiffs did not abandon their property and never indicated in any way that they had given up their rights to such property or knowingly relinquished control over it. To the contrary, Defendants knew that the Plaintiffs were not giving up their absolute right and exclusive possession prior to invading the property because, amongst other things, the home was filled with personal belongings and furniture and Plaintiffs had appeared in court to defend the foreclosure proceeding.

78.     At all relevant times, Plaintiffs had an absolute right and exclusive possession to their property as Wells Fargo never obtained any judicial order of possession or judicial confirmation of sale, and Defendants knew with a substantial degree of certainty that entering the property would result in an intrusion upon Plaintiffs' possessory rights and personal sanctuary.

79.     The mortgage foreclosure summons states, "You continue to own your home until the court rules otherwise."

80.     The mortgage foreclosure summons further states, "The lawful occupants of a home have the right to live in the home until a judge enters an order for possession."

81.     Defendants' employees or agents intentionally entered into Plaintiffs' home without justification and without authorization when Plaintiffs' home was not, and did not appear to be, abandoned.

82.     Defendants used their employees or agents to break into Plaintiffs' home and

padlock their doors more than once and prior to any judicial order granting them authority to do so.

83.     While Plaintiffs had not timely paid under the mortgage, Wells Fargo knew at the time it sent agents to enter the Plaintiffs' home that there was no right to effectuate the equivalent of a pre-foreclosure, non-judicial dispossession.

84.     The fact that Defendants' employees or agents had to break existing locks to gain access to the Plaintiffs' home evidences that the entry was neither peaceful nor limited to any purpose to securing the home.

85.     Defendants knew or should have known that sending employees or agents to break into Plaintiffs' home would result in an intrusion.

86.     Plaintiffs were damaged as a result of Defendants' conduct.  Their property was damaged, they were dispossessed of their home, and they were forced to live in a constant state of fear and anxiety over another break-in.  Plaintiffs had to pay money to fix their locks, lost property that was not fully repaid under insurance, and spent time, money and effort to fix the damage caused by the two break-ins.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor against Defendants Wells Fargo Bank, N.A., LPS Field Services, Inc. and REO Illinois, and award:

A)     Actual and punitive damages; and

B)     Such other and further relief as this Court may deem just and proper.

### COUNT IV
### *Invasion of Privacy, Brought By Plaintiffs, Individually, Against all Defendants*

87.     Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-35 as if set forth fully herein.

88.     This Count is brought on behalf of Plaintiffs individually.

16

89.     Plaintiff s were in possession of their private home and never provided notice to Defendants that they relinquished their right to quiet enjoyment of the property.

90.     Defendants sent their agents to enter into Plaintiffs' home without Plaintiffs' authorization.

91.     Defendants' intrusion into Plaintiffs' private home was unauthorized and without any legal basis.

92.     Plaintiffs' home is a private residence that contains their family's personal private effects, and as such, Plaintiffs lock their doors in an effort to keep their personal information and effects private.

93.     Defendants' agents did not just enter Plaintiffs' home, see that it was occupied and leave.

94.     Instead, Defendants' agents trespassed into Plaintiffs' home and went through Plaintiffs' belongings.

95.     Defendants' intrusion into Plaintiffs' privacy is extremely offensive and shocking to a reasonable person.

96.     Defendants' conduct caused Plaintiffs actual damages, anguish, and suffering.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor against Defendants Wells Fargo Bank, N.A., LPS Field Services, Inc. and REO Illinois, and award:

A)     Actual and punitive damages; and

B)     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the class, demand a trial by jury.

17

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
The Consumer Advocacy Center, P.C.
180 W. Washington St., Suite. 700
Chicago, IL 60602
(312) 782-5808