IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN HILL and MELISSA HILL, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 7240 |
| v. | ) ) ) | Judge Feinerman Magistrate Judge Valdez |
| WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE, and LPS FIELD SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) | JURY DEMANDED |

## FIRST AMENDED CLASS ACTION COMPLAINT

1.  Plaintiffs Brian and Melissa Hill, on behalf of themselves and all similarly-situated individuals, seek relief against Defendants Wells Fargo Bank, N.A, d/b/a Wells Fargo Home Mortgage ("Wells Fargo") and LPS Field Services, Inc. ("LPS").

2.  Defendants committed unfair and deceptive business practices, which violate the express public policy of the State of Illinois as embodied in the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.*), unlawfully trespassed, and wrongfully deprived Plaintiffs and other Illinois homeowners of the exclusive possession and quiet enjoyment of their homes.

3.  Defendants harassed Plaintiffs with repeated entries into their home and onto their property without any finding of abandonment or other court order granting Defendants such rights.

## PARTIES

4.  Plaintiffs Brian Hill and Melissa Hill are a married couple who own the property located at 1019 Barberry Lane, Round Lake Beach, Illinois 60073.

5. Defendant Wells Fargo Bank, N.A. avers that it is the mortgagee and servicer of the Hills' property located at 1019 Barberry Lane, Round Lake Beach, Illinois 60073. *See* Exhibit A.

6. On information and belief, Wells Fargo is a citizen of South Dakota and engages in banking and mortgage lending services throughout this district and has subjected itself to the laws of the State of Illinois.

7. Wells Fargo retained Defendant LPS Field Services, Inc. as its agent to effectuate the entries into Plaintiffs' home, board up the Plaintiffs' home, enter onto Plaintiffs' property, and repeatedly post harassing bulletins on the Plaintiffs' property. LPS describes itself as a "national leader" in field services and offers "comprehensive preservation services" such as lock changes and board-ups.

8. LPS is a Delaware corporation, headquartered in Florida, with a registered agent located in this district. LPS has subjected itself to the laws of the State of Illinois.

## JURISDICTION AND VENUE

9. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiffs' and the class members' claims arise under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Supplemental jurisdiction over the state law claims exists under 28 U.S.C. § 1367(a).

10. Further, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) and/or (d) because: (a) Plaintiffs and Defendants are citizens of different states and the individual matter in controversy between them exceeds $75,000, exclusive of interests and costs; and/or (b) this case is brought as a putative class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and at least one member of the proposed class is a

citizen of a state different from all Defendants.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district. Venue is also proper since Defendants have agents and transact business in this district.

**FACTS SPECIFIC TO PLAINTIFFS**

12. On September 24, 2001, Plaintiffs executed a mortgage and note with Washington Mutual Bank, FA for the property located at 1019 Barberry Lane, Round Lake Beach, Illinois 60073, for the principal sum of $76,599.00.

13. Plaintiffs lived at the property with their young daughter and made their mortgage payments for several years.

14. However, Brian Hill lost his job as a union carpenter. To try and make ends meet, Melissa Hill (formerly a stay-at-home mother) found work, but it paid less than her husband's former job. When the Hills' savings and carpenters' annuity ran out, even with Melissa's salary, the Plaintiffs struggled with putting food on their table and making their monthly mortgage payments.

15. As a result of their hardship, the Plaintiffs missed their October 2009 mortgage payment.

16. On or about November 1, 2009, Brian Hill called their mortgage servicer, Wells Fargo, and asked for a loan modification and to be considered for different work-out options.

17. During the call, Brian Hill gave Wells Fargo financial information over the phone (specifically, a list of his family's monthly income sources and monthly expenses) so that Plaintiffs could be considered for a loan modification or other work-out option.

18. Wells Fargo represented to Plaintiffs that they were eligible for a "6 month moratorium" or words to that effect, and led Mr. Hill to believe that the 6 months of deferred payments would be added on to the end of the loan term.

19. In April of 2010, prior to the termination of the 6 month deferral period, Brian Hill spoke with Wells Fargo and again asked to be considered for a loan modification or other assistance to save his family home.

20. Instead of helping, Wells Fargo sent a letter demanding payment in full of the prior 6 months of deferred mortgage payments and threatening foreclosure.

21. On June 7, 2010, Wells Fargo filed a complaint to foreclose against the Hills in the Circuit Court of Lake County, Case No. 10 CH 3212. *See* Exhibit A. The complaint stated, "Plaintiff seeks to terminate the right to possess the mortgaged real estate after confirmation of a foreclosure sale against all defendants who have the right to possess the property."

22. Attached to the summons and complaint was Wells Fargo's "IMPORTANT INFORMATION FOR HOMEOWNERS IN FORECLOSURE." As required by Illinois law, Defendant's notice stated, among other things: "1. POSSESSION: The lawful occupants of a home have the right to live in the home until a judge enters an order for possession. 2. OWNERSHIP: You continued to own your home until the court rules otherwise." 735 ILCS 5/15-1504.5.

23. Prior to being served with the complaint, on June 14, 2010, Brian Hill wrote to Wells Fargo's Loss Mitigation Department and explained he still wanted to try and save his home. *See* Exhibit B.

24. But on June 24, 2010, the Hills were served with the complaint.

25. The Hills appeared at the first court status hearing in the foreclosure case on September 17, 2010. The Hills informed both the court and Wells Fargo's attorney that they

intended to keep their family home and were trying to find a way to work the matter out. Accordingly, on or about October 10, 2010, the Hills filed a *pro se* appearance and answer, indicating their intent to defend the foreclosure action. The foreclosure case was set for a continued status hearing on December 17, 2010.

26. Despite the Hills appearing in court to defend their rights to their home, on or about November 1, 2010, Brian Hill returned home to find that his home had been broken into. The deadbolt and door knob on the exterior entry door were removed and replaced, the hot water tank was drained (by drilling a hole in the floor and making it unserviceable), faucets were opened to drain the water lines, the main gas valve was shut off, and antifreeze was dumped in the toilet.

27. While in the home, agents rifled through the Hills' personal effects, and Brian Hill discovered that multiple items of personal property were missing including, most importantly, some of the tools that Mr. Hill relied upon for his livelihood as a carpenter.

28. Mr. Hill filed a police report and an insurance claim and worked to secure his and his wife's identities with the bank and other financial institutions holding accounts for them because their account numbers could have been compromised during the break-in.

29. On December 9, 2010, Mr. Hill filed a complaint against Wells Fargo with the Illinois Attorney General, explaining that his home had been broken into by the bank's agents while he was still defending a foreclosure action and asking for mortgage assistance.

30. At the December 17, 2010 status in the foreclosure action, the Hills advised the court and Wells Fargo's attorney of the break-in and theft. The judge confirmed that no order had been issued and nothing had transpired in the case which would have given Wells Fargo any right to enter the Hills' home. The judge asked Wells Fargo's attorney to find out what happened, and continued the case.

31. In the following months, Wells Fargo, by and through its agent LPS Field Services and LPS' agents, visited the Hills' home on multiple occasions, posting various form stickers and notices on the windows and doors. *See* Exhibit C. These postings advised such things as, "LPS Field Services, Inc. inspected this property and found it to be vacant or abandoned … it is likely that the mortgage holder will have the property secured and/or winterized within the next few days;" and stated that LPS should be contacted if an emergency arose or maintenance was required.

32. During the summer of 2011, Wells Fargo filed a motion for summary judgment in the foreclosure case. In the motion, Wells Fargo asked the Hills to pay costs associated with its agents' break-ins and postings on the Hills' home.

33. Before any judgment of foreclosure was granted, on or about September 7, 2011, Brian Hill returned home to discover that the locks on the front entry to the garage had been changed. This time, however, the new lock on the exterior entry door was not properly fitted and the Hills' home was left unsecured. Therefore, the Hills were forced to hire a locksmith to change the locks and secure the property. The Hills' belongings were once again tampered with and the privacy and security of their personal effects inside the home, including furniture, clothing, and toys, were violated.

34. On or about September 23, 2011, Wells Fargo's agents entered the Hills' home yet again, without the court's or the Hills' permission.

35. On or about October 18, 2011, Wells Fargo instructed LPS to continue performing "vacant property svcs" on the Hills' home. *See* Exhibit D.

36. The Hills' home continues to be trespassed by Wells Fargo's agents. *See* Exhibit C (demonstrating June 2012 and August 2012 visits). On November 15, 2012, Mr. Hill's neighbor told him that Wells Fargo's agents were once again on the property.

37. The Hills also continue to receive letters from LPS asking whether the property is abandoned and whether it is owner or tenant-occupied. LPS sent letters on dates including but not limited to December 19, 2011, January 13, 2012, February 9, 2012, and March 9, 2012.

38. On information and belief, the above actions were taken by Defendants to wrongfully induce the Hills' abandonment of the property.

## CLASS ALLEGATIONS

39. This complaint is brought on behalf of Plaintiffs and the members of a class. The class is defined as all persons in the State of Illinois to whom: (a) Defendants and their agents threatened to take or did take non-judicial action to effectuate the non-judicial dispossession or disablement of homes prior to the entry of any court order which: (i) determined the property had been abandoned; or (ii) ordered possession or a judgment of foreclosure, sale, and confirmation of sale pursuant to 735 ILCS 5/15-1508.

40. On information and belief, the class is so numerous that joinder of all individual members in one action would be impracticable.

41. Plaintiffs' claims are typical of the claims of the class members. All are based upon the same legal theories and arise from the same unlawful conduct.

42. There are common questions of law and fact affecting members of the class, which common questions predominate over questions that may affect only individual members. These common questions include, but are not limited to:

    a. Whether Defendants' practices of boarding up, changing locks, and entering into homes without hearing or a court order violates statutory and common law;

    b. Whether Defendants' pre-judgment dispossession constitutes unfair and deceptive business practices and unlawful trespass;

    c. Whether Defendants' form notices (*see*, *e.g.*, Exhibit C), falsely, deceptively or unfairly state a consumer's obligations and a mortgagee's rights in contravention

of the Illinois Mortgage Foreclosure Law; and

    d.    Whether Defendant LPS violated § 1692f(6) the FDCPA.

43.    Plaintiffs will fairly and adequately represent the members of the class. Plaintiffs have no interests that conflict with the interests of the class members. Plaintiffs have retained counsel experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests that might cause them to not pursue this claim vigorously.

44.    This action should be maintained as a class action because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the class.

45.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole because:

    a.    At all relevant times, no court had found that Plaintiffs and the class members abandoned their homes.

    b.    At all relevant times, Plaintiffs and the class members had not been the subject of any court order allowing pre-judgment access to or a transfer of possession of their property.

    c.    Plaintiffs and the class members had an absolute right to their properties, to the exclusion of Defendants, as Defendants never obtained any judicial order of possession nor did they have any finding of abandonment by a court.

### COUNT I
*Violations of the Fair Debt Collection Practices Act*
*Against Defendant LPS Field Services, Inc.*

46.    Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-45 as if set forth fully herein.

47. This Count is brought on behalf of Plaintiffs and the class for conduct occurring at any time between the one year prior to September 11, 2012 and the date a class is certified.

48. Defendant LPS Field Services is a debt collector as, under 15 U.S.C. § 1692a(6), "such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purposed of which is the enforcement of security interests."

49. Defendant LPS Field Services is subject to liability under 15 U.S.C. § 1692f(6).

50. 15 U.S.C. § 1692f(6) prohibits "<u>taking or threatening</u> to take any nonjudicial action to effect dispossession or disablement of property if -

    (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    (B) there is no present intention to take possession of the property; or

    (C) the property is exempt by law from such dispossession or disablement."

(emphasis added)

51. LPS and its agents made threats of nonjudicial action, and took nonjudicial action, to effectuate the dispossession or disablement of property belonging to Plaintiffs and the class members in order to enforce a security interest.

52. LPS and its agents' threats and takings occurred when neither it nor Wells Fargo had a present right to possession of the property.

53. LPS and its agents' threats and takings occurred when the property was exempt by law from such dispossession or disablement.

54. For example, there was no present right to possession, and the property was exempt from dispossession or disablement, because foreclosure actions are filed under the authority of the Illinois Mortgage Foreclosure Law ("IMFL"). *See* 735 ILCS 5/15-1106.

9

55. The IMFL provides that dispossession of the Plaintiffs' and the class members' properties is governed exclusively by the courts presiding over the foreclosure actions. *See* 735 ILCS 5/15-1106.

56. The IMFL grants mortgagors the right to remain in their homes pending the foreclosure process. *See*, *e.g.*, 735 ILCS 5/15-1701 ("(b) Pre-Judgment. Prior to the entry of a judgment of foreclosure: (1) In the case of residential real estate, the mortgagor shall be entitled to possession of the real estate except if (i) the mortgagee shall object and show good cause, (ii) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (iii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause, the court shall upon request place the mortgagee in possession.")

57. The IMFL makes it a Class B misdemeanor to induce occupants to abandon mortgaged premises, with 735 ILCS 5/15-1104 stating:

> Any person who willfully misrepresents to the Court any fact resulting in a finding of abandonment of mortgaged real estate in connection with subsection (b) of Section 15-1603 or subsection (d) of Section 15-1706 of this Article [735 ILCS 5/15-1603 or 735 ILCS 5/15-1706] <u>or who threatens to injure the person or property of occupants of mortgaged real estate, or who knowingly gives such occupants false and misleading information, or who harasses or intimidates such occupants</u>, with the intent of inducing such occupants to abandon the mortgaged premises, in order to obtain a finding of abandonment under subsection (b) of Section 15-1603 or subsection (d) of Section 15-1706 of this Article [735 ILCS 5/15-1603 or 735 ILCS 5/15-1706], shall be guilty of a Class B misdemeanor.

(emphasis added)

58. LPS Field Services and its agents unlawfully attempted to induce abandonment of property by the following conduct, including but not limited to, ordering break-ins, turning off water supplies, changing locks, posting notices on front doors and windows, and boarding up windows.

59. LPS Field Services and its agents misrepresented the mortgagee's rights of possession and made false statements as to the legality of its work through its use of the form notices attached

as Exhibit C.  Specifically, LPS' form postings falsely threaten dispossession and/or disablement of property when such conduct must be approved by the court when a foreclosure action is pending by stating, "Accordingly, it is likely that the mortgage holder will have the property secured and/or winterized within the next few days."

60. These nonjudicial tactics to effect the dispossession or disablement of property were performed prior to any court finding of abandonment or mortgagee possession and therefore violate 15 U.S.C. § 1692f(6).

61. LPS and its agents caused classwide actual damages such as: (a) out-of-pocket costs to return properties to their pre-break-in condition; and (b) mortgagors being subjected to an additional purported indebtedness and asked to pay the costs associated with the break-ins, property inspections, and lock changes.

62. Statutory damages are also available under the FDCPA.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and in favor of the proposed class, against Defendant LPS Field Services, Inc. and award:

A) Actual damages in an amount to be proven at trial;

B) Statutory damages as provided by 15 U.S.C. §1692k;

C) Reasonable attorneys' fees and costs; and

D) Such other and further relief as this Court may deem just and proper.

### COUNT II
*Violations of the Illinois Consumer Fraud Act*
*Against All Defendants*

63. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-45 as if set forth fully herein.

64. This Count is brought on behalf of Plaintiffs and the class.

65. 815 ILCS 505/2 of the Illinois Consumer Fraud Act ("ICFA") provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45].

66. Instead of complying with the law and taking the legally required steps to gain possession of mortgaged properties, Defendants unlawfully attempted to take, and in fact took actions to take possession, of the Plaintiffs' and the class members' homes.

67. Wells Fargo was negligent or reckless in the selection, instruction, supervision, and retention of LPS Field Services and its agents and therefore, can be held liable for the unlawful acts of its agents. Likewise, LPS Field Services was negligent or reckless in the selection, instruction, supervision, and retention of its own agents and therefore, can be held liable for the unlawful acts of its agents.

68. Defendants' conduct, individually and through their agents, is unfair and prohibited by the ICFA as it violates public policy. Breaking and entering into and upon Plaintiffs' and the class members' properties was unfair, unconscionable, and oppressive, in violation of the laws of the State of Illinois.

69. The laws and public policy of the State of Illinois include the IMFL (735 ILCS 5/15-1101 *et seq*.) which provides, among other things, that:

   a. The wrongful inducement of abandonment of property is prohibited.

   b. Mortgagors are entitled to possession of real estate until the court rules otherwise.

      c.      Mortgagors have until thirty days after a judicial confirmation of a sale to remain in their homes.

      d.      Mortgages may only be foreclosed in accordance with the IMFL.

70.      As a result of filing foreclosure actions against Plaintiffs and the class members, Wells Fargo submitted the issues of property vacancy, abandonment, and possession to the state court. Under 735 ILCS 5/15-1103, once a foreclosure lawsuit is filed, the jurisdiction of the court "continues during the entire pendency of the foreclosure and until disposition of <u>all matters</u> arising out of the foreclosure." (Emphasis added).

71.      735 ILCS 5/15-1706 provides that requests for mortgagees to be placed in possession must be supported by affidavit or other sworn pleading.

72.      Defendants' actions were unfair, unconscionable, and oppressive in that they summarily threatened to take and/or did take possession of Plaintiffs and the class members' properties without legal authority. This conduct is also unfair in that it is inconsistent with the IMFL and the form foreclosure complaint notice to homeowners, which represents that "The lawful occupants of a home have the right to live in the home <u>until a judge enters an order for possession</u>." 735 ILCS 5/15-1504.5 (emphasis added).

73.      Defendants' actions were unfair, unconscionable, and oppressive in that Defendants entered into and took possession of Plaintiffs' property when Defendants knew that Plaintiffs could not have "abandoned" the property. For example, Plaintiffs' home was filled with their personal possessions, Plaintiffs had appeared to defend the state foreclosure action, they had filed a complaint with the Illinois Attorney General, and they had notified Defendants on repeated occasions their property was not abandoned.

74.      Wells Fargo's regular practice is to hire agents such as LPS Field Services without any pre-judgment court order permitting such action.

75. Defendants' attempts to take possession of Plaintiffs' and the class members' properties was unethical, immoral, oppressive, and unscrupulous in that, among other things, it deprived Plaintiffs and the class of their legal rights to remain in their homes.

76. Defendants' conduct is not just unfair but it is also deceptive because Wells Fargo's agents' form postings falsely threaten dispossession and/or disablement of property when such conduct must first be approved by the court. *See* Exhibit C ("Accordingly, it is likely that the mortgage holder will have the property secured and/or winterized within the next few days.") Even though in many instances this conduct was actually performed, it was unlawful to do so.

77. These form postings are in direct contravention of the form mortgage foreclosure notices, which advised Plaintiffs and the class members that, "The lawful occupants of a home have the right to live in the home until a judge enters an order for possession." *See* Exhibit A.

78. Defendants' actions and representations were made with the intent that Plaintiffs and the class members rely on them.

79. Plaintiffs and the class members were substantially damaged as result of Defendants' conduct in that, among other things, they were dispossessed from their homes and charged for the trespasses wrongfully performed by Defendants.

80. Defendants' conduct occurred in the course of trade or commerce of Illinois.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor and in favor of the proposed class, against Defendants Wells Fargo Bank, N.A. and LPS Field Services, Inc. and award:

A) Injunctive relief as appropriate;

B) Actual and punitive damages under the Illinois Consumer Fraud Act, 815 ILCS 505/10;

C)  Reasonable attorneys' fees and costs; and

D)  Such other and further relief as this Court may deem just and proper.

## COUNT III
### *Trespass, Brought By Plaintiffs, Individually, Against all Defendants*

81. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-45 as if set forth fully herein.

82. This Count is brought on behalf of Plaintiffs individually.

83. Plaintiffs were in exclusive possession of their home and never relinquished their rights to quiet enjoyment of the property.

84. Plaintiffs did not abandon their property and never indicated they had given up their rights to the property or relinquished control over it. To the contrary, Defendants knew the Plaintiffs were not giving up their absolute right to exclusive possession prior to invading the property because, amongst other things, the home was filled with personal belongings and furniture and Plaintiffs had appeared in court to defend the foreclosure proceeding.

85. At all relevant times, Plaintiffs had an absolute right to exclusive possession to their property because Wells Fargo never obtained any judicial order of possession or judicial confirmation of sale, and Defendants knew with a substantial degree of certainty that entering the property would result in an intrusion upon Plaintiffs' possessory rights and personal sanctuary.

86. The mortgage foreclosure summons states, "You continue to own your home until the court rules otherwise."

87. The mortgage foreclosure summons further states, "The lawful occupants of a home have the right to live in the home until a judge enters an order for possession."

88. Defendants' employees or agents intentionally entered Plaintiffs' home without

legal justification or authorization when Plaintiffs' home was not, and did not appear to be, abandoned.

89. Defendants used their employees or agents to break into Plaintiffs' home and padlock their doors more than once, prior to any judicial order granting them authority to do so.

90. While Plaintiffs had not timely paid under the mortgage, Wells Fargo knew at the time it sent agents to enter the Plaintiffs' home that there was no right to effectuate the equivalent of a pre-foreclosure, non-judicial dispossession.

91. The fact that Defendants' employees or agents had to break existing locks to gain access to the Plaintiffs' home shows the entry was neither peaceful nor limited to any purpose to securing the home.

92. Defendants knew or should have known that sending employees or agents to break into Plaintiffs' home would result in an illegal intrusion.

93. Plaintiffs were damaged as a result of Defendants' conduct. Their property was damaged, they were dispossessed of their home, and they were forced to live in a constant state of fear and anxiety over another break-in. Plaintiffs had to pay money to fix their locks, lost property that was not fully repaid under insurance, and spent time, money and effort to fix the damage caused by the multiple break-ins.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor against Defendants Wells Fargo Bank, N.A. and LPS Field Services, Inc. and award:

A) Actual and punitive damages; and

B) Such other and further relief as this Court may deem just and proper.

### COUNT IV
*Invasion of Privacy, Brought By Plaintiffs, Individually, Against all Defendants*

94. Plaintiffs restate, reallege, and incorporate herein by reference paragraphs 1-45 as

if set forth fully herein.

95. This Count is brought on behalf of Plaintiffs individually.

96. Plaintiffs were in possession of their private home and never provided notice to Defendants that they relinquished their right to quiet enjoyment of the property.

97. Defendants sent their agents to enter into Plaintiffs' home without Plaintiffs' authorization.

98. Defendants' intrusion into Plaintiffs' private home was unauthorized and without any legal basis.

99. Plaintiffs' home is a private residence that contains their family's personal private effects, and as such, Plaintiffs lock their doors in an effort to keep their personal information and effects private.

100. Defendants' agents did not just enter Plaintiffs' home, see that it was occupied and leave.

101. Instead, Defendants' agents trespassed into Plaintiffs' home and went through Plaintiffs' belongings.

102. Defendants' intrusion into Plaintiffs' privacy is extremely offensive and shocking to a reasonable person.

103. Defendants' conduct caused Plaintiffs actual damages, anguish, and suffering.

WHEREFORE, Plaintiffs ask that this Court enter judgment in their favor against Defendants Wells Fargo Bank, N.A. and LPS Field Services, Inc. and award:

A) Actual and punitive damages; and

B) Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the class, demand a trial by jury.

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
Michael S. Hilicki
The Consumer Advocacy Center, P.C.
180 W. Washington St., Suite. 700
Chicago, IL 60602
(312) 782-5808